# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNIVERSAL PHYSICIAN SERVICES,
LLC,

      Plaintiff,

v.                                   Case No: 8:16-cv-1274-T-36JSS

AMANDA DEL ZOTTO, ERIC DELONG,
CLINICAL SERVICES, LLC, CLINICAL
SERVICES INTERNATIONAL,
CLINICAL SERVICES
INTERNATIONAL, INC., CLINICAL
SERVICES INTERNATIONAL, LLC, CSI,
INC., and CSI, LLC,

      Defendants.

_____/

# **O R D E R**

This cause comes before the Court upon Defendant Eric DeLong's ("DeLong") and Defendant Clinical Services, LLC's ("CSI") Motion to Amend Affirmative Defenses (Doc. 168) and Plaintiff Universal Physician Services LLC's ("UPS") response (Doc. 186); DeLong's and CSI's Motion for Judgment as a Matter of Law (Doc. 170) and UPS's response (Doc. 187); UPS's Motion for Partial Summary Judgment (Doc. 126), DeLong's and CSI's response (Doc. 135), and UPS's reply (Doc. 140); and UPS's Motion for Summary Judgment on Counterclaim (Doc. 151), DeLong's and CSI's response (Doc. 155), and UPS's reply (Doc. 156).

Upon due consideration of the parties' submissions and for the reasons that follow, the Court will deny the Motion to Amend Affirmative Defenses, deny the Motion for Judgment as a Matter of Law, deny the Motion for Partial Summary Judgment, and grant in part and deny in part the Motion for Summary Judgment on Counterclaim.

## I.      Relevant Background and Procedural History

This action concerns the alleged destruction and/or theft of trade secrets. UPS filed this case on or about April 9, 2015 in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida (the "state court"), naming Amanda Del Zotto ("Del Zotto") as the sole defendant. Doc. 89-1 at pp. 34-45. UPS's original complaint alleged the following causes of action: injunctive relief, breach of fiduciary duty, tortious interference, conversion, replevin, civil theft, and breach of confidential relationship (the "Original Complaint"). Doc. 89-1 at pp.34-45; Doc. 2 at ¶ 98.

The state court entered a temporary injunction against Del Zotto, enjoining her from using, altering, or destroying any of UPS's confidential information, personal property, emails, or passwords and from communicating with UPS's customers, customer base, and physicians pending further order of the state court. Doc. 120 at p. 24. Del Zotto was ordered to return all confidential information, personal property, company emails, and passwords to UPS within ten days following service of the injunction. Doc. 120 at p. 24.

Before returning UPS's computer equipment in June 2015, Del Zotto intentionally deleted and destroyed UPS's confidential business information. Doc. 89-1 at p. 9, ¶ 12. The state court entered an order granting UPS's motion for sanctions for litigation misconduct, and the state court struck Del Zotto's answer and entered default judgment as to liability against her on Counts II, III, and VII of the Original Complaint. Doc. 74 at p. 59.

UPS was granted leave to file a Verified Supplemental Complaint (the "Supplemental Complaint") against DeLong and Clinical Services, LLC a/k/a Clinical Services, Inc., Clinical Services International, Clinical Services International, Inc., Clinical Services International, LLC, CSI, Inc. and/or CSI, LLC (collectively, "CSI"). Doc. 1-1 at p. 1; Doc. 2 at pp. 1-2. The Supplemental Complaint alleged additional counts against Del Zotto, DeLong and CSI, including civil conspiracy to misappropriate trade secrets against Del Zotto, DeLong and CSI, injunctive

relief against DeLong and CSI, tortious interference against DeLong and CSI, and civil conspiracy to tortiously interfere with business relationships and contracts against Del Zotto, DeLong, and CSI. Doc. 2.

On April 1, 2016, UPS and Del Zotto went to trial on Counts I, II, III, and VII of UPS's Original Complaint and Count VII of the Supplemental Complaint. Doc. 20 at p. 13. Del Zotto testified at the non-jury trial. Doc. 139-2. The state court found in favor of UPS and against Del Zotto on each of those counts, and entered a Partial Final Judgment for Damages. Doc. 20 at p. 13.

DeLong and CSI were served with the Supplemental Complaint on or about May 6, 2016. Doc. 5 at p. 1. DeLong and CSI removed the case to this Court on May 20, 2016, invoking the Court's diversity jurisdiction pursuant to 32 U.S.C. § 1332, and filed a Motion to Dismiss. Doc. 1; Doc. 5. Del Zotto consented to removal. Doc. 3; Doc. 5. The Court entered an Order to Show Cause based on DeLong's and CSI's failure to sufficiently identify the citizenship of the parties and their failure to establish the amount in controversy. Doc. 8. Subsequently, the Court determined that it has jurisdiction over this matter and that removal was appropriate.

Upon consideration of the parties' case management report, the Court entered a Case Management and Scheduling Order ("CMSO"), which set forth deadlines to amend pleadings, for discovery, and for filing motions. Doc. 37. The Court extended certain of these deadlines upon motions. *E.g.*, Doc. 95; Doc. 97; Doc. 115; Doc. 118.

On March 16, 2017, after the Court denied their Motion to Dismiss, DeLong and CSI filed their Answer to the Supplemental Complaint. Doc. 85. DeLong and CSI raised the following affirmative defenses: failure to state a claim, lack of personal jurisdiction, causation, laches, unclean hands, estoppel, and statute of frauds. Doc. 85. DeLong and CSI also "reserve[d] all of those defenses set forth in Rule 8(c) of the Federal Rules of Civil Procedures [sic] and such other

3

defenses, affirmative or otherwise, as may be proved through discovery to be applicable." Doc. 85.

In addition, DeLong and CSI asserted counterclaims against UPS, Mary Ludvik ("Ludvik"), Joe Del Zotto, and Anthony Del Zotto in their individual and official capacities as members or agents of UPS. Doc. 85 at p. 13. DeLong and CSI asserted the following counterclaims against all counter-defendants: unfair and deceptive trade practices, tortious interference with contractual and business relations, tortious interference with prospective contractual and business relations, conspiracy to interfere with contractual and business relations, conspiracy to interfere with prospective contractual and business relations, defamation, and outrage. Doc. 85.

The parties engaged in additional motion practice and discovery in this Court. UPS then filed its Motion for Partial Summary Judgment on October 17, 2017 and filed its Motion for Summary Judgment on Counterclaim on February 1, 2018. Doc. 126; Doc. 151. On May 22, 2018, DeLong and CSI filed their Motion to Amend and Motion for Judgment as a Matter of Law. Doc. 168; Doc. 170.

Del Zotto was briefly represented by counsel during the pendency of the litigation in this Court.[1] Otherwise, Del Zotto has proceeded *pro se*. Del Zotto has not filed any paper directed to any of the motions now before the Court for review.

## II. Threshold Issues

### A. The Court has Subject Matter Jurisdiction

---

[1] Del Zotto was represented by attorney Moein Marashi from about September 19, 2016 until about November 3, 2016. Doc. 46; Doc. 51; Doc. 54; Doc. 58; Doc. 59. Alan F. Hamisch, Esq. ("Hamisch") filed a notice of appearance on behalf of his clients, DeLong and CSI on November 13, 2017. Doc. 130. Hamisch's representation of Del Zotto in this case was apparently limited to filing a Suggestion of Bankruptcy on her behalf on November 17, 2017. Doc. 134. At the Court's most recent hearing on June 19, 2018, Del Zotto stated that she intended to represent herself. *See* Doc. 205.

The Court first addresses DeLong's and CSI's "alternative" argument that the Court lacks subject matter jurisdiction because the amount in controversy is not met. *See Univ. of S. Ala. v. Am. Tobacco Co*., 168 F.3d 405, 410 (11th Cir. 1999) (A federal court "without subject matter jurisdiction . . . is powerless to continue."). DeLong's and CSI's argument, posited two years after they removed the case to this Court, relies on the same evidence—the $512,871.00 unsatisfied[2] state court judgment—that they initially offered to show that the amount in controversy *was met*. Doc. 170 at p. 7; Doc. 11 at p. 3. Pointing again to that same judgment, DeLong and CSI now argue that the amount in controversy does not exceed $75,000.00 because "the $512,871.00 state judgment" is a "credit" against the $560,000.00 UPS allegedly seeks in this lawsuit. Doc. 170 at pp. 7, 10.

Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). With respect to the amount in controversy, "[w]hen the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Id*.

A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy *at the time of removal,* not later. *See Vega v. T–Mobile USA, Inc*., 564 F.3d 1256, 1268 n. 12 (11th Cir. 2009) (emphasis added); *Sierminski v. Transouth Fin. Corp*., 216 F.3d 945, 946 (11th Cir. 2000) (holding that a court may consider evidence submitted after the removal petition

---

[2] Part of the judgment, $52,223.30, was satisfied subsequent to removal. Doc. 72.

is filed, "but only to establish the facts present at the time of removal"). A plaintiff's likelihood of success on the merits is "largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (quoting *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009)).

The following evidence can support a basis for meeting the amount in controversy requirement: specific factual details, discovery, affidavits or declarations, testimony, interrogatories, and exhibits. *See Pretka*, 608 F.3d at 753. That evidence combined with "reasonable deductions, reasonable inferences, or other reasonable extrapolations" will permit the Court to determine if the amount in controversy requirement is met. *Id.* at 754.

DeLong and CSI provide no legal authority or other argument in support of their contention that an unsatisfied state court judgment acts as a "credit" or otherwise cannot serve as the basis for determining the requisite amount in controversy at the time of removal. Indeed, the Court previously accepted DeLong's and CSI's contrary argument that the unsatisfied state court judgment should be calculated when determining the amount in controversy. Doc. 29 at p. 3. Nor do DeLong and CSI provide any other evidence to otherwise suggest that the amount in controversy was not met at the time of removal. Simply, DeLong's and CSI's contention is without merit. The Court finds, as it did previously, that the amount in controversy was met at the time of removal. The Court has subject matter jurisdiction.

### B.  DeLong's and CSI's Pending Motions are Untimely and Will Be Denied

#### i.  *Motion to Amend Affirmative Defenses*

A court should freely grant leave to amend pleadings "when justice so requires," Fed. R. Civ. P. 15(a)(2), and there is a strong preference in the Eleventh Circuit for allowing amendment.

*See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999). However, "the grant or denial of an opportunity to amend is within the discretion of the [d]istrict [c]ourt . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

District courts must issue scheduling orders limiting the time to join parties, amend the pleadings, complete discovery, and file motions. Fed. R. Civ. P. 16(b)(3). Therefore, while leave to amend a pleading is "freely given" under Rule 15(a), a court must also consider the requirements of Rule 16(b)(4), which provides that a Case Management and Scheduling Order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1418-19 (11th Cir. 1998). Thus, a movant seeking leave to amend after the deadline must show good cause by demonstrating that despite their diligence, the deadline could not be met. *Sosa,* 133 F.3d at 1419 ("[To Consider] Rule 15(a) without regard to Rule 16(b) . . . would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.").[3] A district court may deny a motion to amend on numerous grounds, including undue delay, undue prejudice to the defendant(s), and futility of the amendment. *Maynard v. Bd. of Regents of the Div. of Univs. of the Florida Dep't. of Educ.*, 342 F.3d 1281, 1287 (11th Cir. 2003).

DeLong's and CSI's Motion to Amend Affirmative Defenses requests that the Court allow them to add a *res judicata* defense. Doc. 168 at p. 1. The motion alleges that DeLong and CSI "will be prejudiced if this motion is not granted" and states that "[t]here is no 'substantial reason' to deny" leave to amend. Doc. 168 at p. 2.

---

[3] The Eleventh Circuit has declined to apply the excusable neglect standard under Federal Rule of Civil Procedure 6(b)(1)(B) to motions to amend pleadings after the deadline. *Sosa,* 133 F.3d at 1418, n. 2 ("[W]hen a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused."). *See also Destra v. Demings*, 725 Fed. Appx. 855, 859 (11th Cir. 2018) (explaining Eleventh Circuit precedent on this issue).

In response, UPS argues that the motion should be denied because *res judicata* is a legal defense which could have been pleaded in the original answer, because DeLong and CSI have acted with bad faith and undue delay in seeking amendment, and because amendment would be futile given that the record clearly establishes that UPS's claims are not barred by *res judicata*. Doc. 186 at pp. 1-2.

As discussed *supra*, upon consideration of the parties' case management report, the Court entered the CMSO which established the deadline for filing amended pleadings, among other things. Doc. 37. The deadline to amend pleadings was October 7, 2016. Doc. 37. No extension of this deadline was sought. Accordingly, Delong's and CSI's motion to amend, filed May 22, 2018, comes before the Court more than one year and seven months late.[4]

The motion provides no explanation for the delay. And, at oral argument on the motion, counsel for DeLong and CSI provided no explanation for the delay other than to state that counsel missed the deadline because of the many filings in this case.

DeLong and CSI have not established good cause by showing that, despite their diligence, the deadline could not have been met. *Sosa*, 133 F.3d at 1419. Rather, based on counsel's statements at the hearing, it appears the delay was because of a lack of diligence. And, the defense of *res judicata*, as UPS points out, is a legal defense which could have been asserted in the initial pleading.

Granting DeLong's and CSI's motion, at this late stage, would also cause prejudice to UPS. At the time of the motion, this case had been pending before this Court for more than two years.

---

[4] The Court acknowledges that DeLong's and CSI's initial Answer and Affirmative Defenses were timely filed on March 16, 2017, fourteen days after the entry of the Court's Order denying DeLong's and CSI's Motion to Dismiss. Doc. 85. This, of course, was after the October 7, 2016 deadline to amend pleadings. Therefore, any amendment by DeLong and CSI would have needed to occur after October 7, 2016. But it was incumbent upon DeLong and CSI to seek an extension of the deadline to amend at that point, not more than a year after the deadline (and more than a year after filing the initial Answer and Affirmative Defenses), as the case nears trial.

Moreover, UPS's Motion for Partial Summary Judgment had been fully briefed and was ripe for review.

Finally, amendment to include a *res judicata* defense would likely be futile. The Eleventh Circuit has previously explained the doctrine:

> The doctrine of *res judicata*, or claim preclusion, bars the parties to an action from litigating claims that were or could have been litigated in a prior action between the same parties. The party asserting claim preclusion as a defense must establish four elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action.

*Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 892 (11th Cir. 2013) (citations omitted).

Importantly, the action before this Court is not a "prior action." Instead, it is a continuation of the action that was before the state court. Indeed, the only reason this action is before this Court at all is because DeLong and CSI chose to remove it to this Court after they were served. DeLong and CSI provide no case law to support a contention that the state court's entry of judgment on some claims, but not others, renders some part of the litigation a "prior action."

Even if the state court's judgment against Del Zotto could constitute a "prior action," the fact remains that the state court entered a final judgment only on some claims, and not others. The other claims, now before this Court, are separate causes of action against additional parties (who do not argue they are in privity with Del Zotto) which have not been litigated to completion.

DeLong and CSI have not shown good cause to amend. DeLong and CSI have acted with undue delay, and amendment at this late stage in the litigation would be prejudicial to UPS. Finally, amendment would be futile. Therefore, the Motion to Amend will be denied.

*ii.  Motion for Judgment as a Matter of Law*

District courts must issue scheduling orders which limit the amount of time to amend pleadings, complete discovery, and file motions. Fed. R. Civ. P. 16(b). "A party seeking the extension of an already-expired scheduling order deadline must show both good cause and excusable neglect." *Payne v. C.R. Bard, Inc.*, 606 Fed. Appx. 940, 944 (11th Cir. 2015) (citing Fed. R. Civ. P. 6(b)(1)(B)). To establish good cause, the party seeking the extension must show that "the schedule [could not] be met despite the diligence of the party seeking the extension." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008).

To determine whether a party has shown excusable neglect meriting an extension of a deadline in the court's scheduling order, a court "must consider all pertinent circumstances, including the danger of prejudice to the nonmovant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Payne*, 606 Fed. Appx. at 944 (quoting *Advanced Estimating Sys., Inc. v. Riney*, 77 F.3d 1322, 1325 (11th Cir. 1996)). "Oversight" or "an attorney's negligent failure" does not amount to excusable neglect. *Solaroll Shade and Shutter Corp., Inc. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1132 (11th Cir. 1986). "Excusable neglect is an elastic concept, yet inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect." *Oliver v. City of Orlando*, No. 6:06-cv-1671-Orl-28DAB, 2011 WL 2149363, at *2 (M.D. Fla. May 31, 2011) (quotation marks omitted) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 370, 392 (1993)).

DeLong and CSI argue in their Motion for Judgment as a Matter of Law that the case against them should be dismissed "due to *res judicata*," a defense that was not pleaded in their

Answer and Affirmative Defenses. Doc. 170 at p. 5. In response, UPS argues that the motion "is a transparent attempt to avoid the fact that the motion is clearly an untimely summary judgment motion" and that *res judicata* is inapplicable because this litigation is a continuation of the state court litigation, not a new action. Doc. 187 at pp. 4-7.

DeLong and CSI state that their motion is brought pursuant to Federal Rule of Civil Procedure 50, which allows a party to bring a motion "at any time before the case is submitted to the jury." Doc. 170 at p. 1. But Federal Rule of Civil Procedure 50 also provides that such a motion may be brought "after a party has been fully heard on an issue during a jury trial." Fed. R. Civ. P. 50(a). No jury trial has been held. Thus, a Rule 50 motion is improper at this stage of the proceedings, and will be denied.

Alternatively, it appears DeLong and CSI bring the motion pursuant to Federal Rule of Civil Procedure 56, Summary Judgment. Doc. 170 at p. 5 ("The defendant requests that this Court grant his motion for summary judgment in the above-styled, due to res judicata."). To the extent DeLong's and CSI's motion seeks summary judgment, the motion is due to be denied because it is untimely and because DeLong and CSI have not established good cause or excusable neglect.

As discussed *supra*, upon consideration of the parties' case management report, the Court entered the CMSO which established the deadline for filing dispositive motions, among other things. Doc. 37. The original deadline for dispositive motions was June 9, 2017. Doc. 37. That deadline was extended twice upon motions by UPS. Doc. 97; Doc. 118. The last Order extending the dispositive motion deadline was entered August 15, 2017. Doc. 118. That Order provided that

all dispositive motions were due by February 2, 2018. Doc. 118. No further extension of the dispositive motion deadline was sought by any party.[5]

DeLong's and CSI's motion, filed May 22, 2018, was filed more than three months after the dispositive motion deadline. Doc. 118; Doc. 170. The motion does not acknowledge the deadline, nor does it suggest that DeLong or CSI had good cause or excusable neglect for filing the late motion. Doc. 170. At oral argument on the motion, counsel for DeLong and CSI provided little explanation for the delay. DeLong's and CSI's counsel, James Zonas,[6] stated that he entered the case after the dispositive motion deadline had passed. Meanwhile, Hamisch, who had appeared in the case before the dispositive motion deadline passed, suggested that deadlines were missed because of the voluminous filings in this case.

None of counsels' statements on the topic are sufficient to show either good cause or excusable neglect. Moreover, in this case, the danger of prejudice to UPS outweighs any of DeLong's or CSI's reasons for delay. Accordingly, the Motion for Judgment as a Matter of Law will be denied.

### III. Summary Judgment

#### A. Statement of Facts[7]

---

[5] Notably, counsel for DeLong and CSI timely sought extensions of deadlines to file other papers, for example, their response to UPS's Motion for Partial Summary Judgement and their response to UPS's Motion for Summary Judgment on Counterclaim. Doc. 131; Doc. 153.The Court granted those motions. Doc. 132; Doc. 154.

[6] James Zonas ("Zonas") appeared on behalf of DeLong and CSI in this case on May 21, 2018, more than three months after the dispositive motion deadline had passed. Doc. 164. However, as the Court explained at the hearing, counsel takes the case as he finds it. Moreover, DeLong's and CSI's other attorney, Hamisch, entered his appearance in this case well before the dispositive motion deadline passed. Doc. 130.

[7] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including the parties' Joint Stipulation of Agreed Material Facts (cited to as the "SMF") (Doc. 158). The parties' Joint Stipulation of Agreed Material Facts contains 51 paragraphs; however, upon review, it appears some of these "agreed" facts, or the evidence on which they are based, are actually disputed and/or are couched in terms of allegations. The Court has carefully reviewed the basis for each stipulation and noted disputes throughout this Order where necessary.

UPS is a family business specializing in temporary transitional and local placement of emergency physicians whose customers include physicians, hospitals, and third parties. SMF at ¶ 1; Doc. 89-1 at p. 7, ¶ 1. Del Zotto is the only daughter of UPS's sole managing member, Ludvik, and Del Zotto worked for UPS from its inception until her termination on February 13, 2015. SMF at ¶ 2. Prior to working for UPS, Del Zotto had no professional relationships with doctors or hospitals that are part of UPS's network and had no experience in or knowledge of the locum tenens industry. SMF at ¶ 3; Doc. 89-1 at p. 9, ¶ 8.

UPS maintains substantial and confidential information on its customers and physicians, including contact information, personal information, and pricing information, as well as critical information pertaining to hospital emergency department contracts, which helps UPS effectively and competitively place physicians at particular hospitals. SMF at ¶ 7; Doc. 89-1 at ¶ p. 8, 4. UPS has maintained confidential business information, including very detailed hospital lists across multiple states containing hospital CEOs, emergency department contract holders and renewal dates, volumes, bids and counties served, credentialing information, provider lists, personal and health information on physicians, as well as proposals and contracts. SMF at ¶ 8; Doc. 89-1 at p. 8, ¶ 5.

The customer information maintained by UPS is a distillation of larger lists of potential customers. SMF at ¶ 9; Doc. 89-1 at p. 8, ¶ 6. The customer list compiled by UPS is not available to the public, is never shared by UPS with anyone outside the company, and is considered confidential company information. SMF at ¶ 9; Doc. 89-1 at p. 8, ¶ 6. In addition to this customer information, UPS maintains confidential pricing information and proposals. SMF at ¶ 9; Doc. 89-1 at p. 8, ¶ 6.

While employed by UPS and responsible for maintaining its hospital lists, provider lists, physician information, and proposals, Del Zotto maintained a company PC and laptop on which she kept this confidential business information. SMF at ¶ 10; Doc. 89-1 at p. 9, ¶ 10. Because Del Zotto was family to UPS's principal, UPS did not require her to sign a non-compete agreement. SMF at ¶ 11; Doc. 89-1 at p. 9, ¶ 9. While at UPS, Del Zotto was given access to UPS's confidential client information, proposals and pricing information. SMF at ¶ 11; Doc. 89-1 at p. 9, ¶ 9.

Before UPS terminated Del Zotto, it had previously contracted with and maintained confidential information related to Greenville Health System ("Greenville"), Team Health, and Bon Secours Health System St. Francis Hospital ("St. Francis"). SMF at ¶ 12; Doc. 150-1 at ¶¶ 3-6, 8. Confidential information related to Greenville, Team Health, and St. Francis was stored on the same computer equipment that Del Zotto destroyed before returning the equipment to UPS. SMF at ¶ 12; Doc. 150-1 at ¶ 5; Doc. 89-1 at p. 9, ¶ 12.

CSI provides physician placement services in hospitals. SMF at ¶ 4. CSI was registered with South Carolina's Secretary of State on March 13, 2015. SMF at ¶ 4. DeLong owns a 10 percent interest in CSI. SMF at ¶ 5; Doc. 124 at p. 54.

Shortly after Del Zotto's termination from UPS in February 2015, she failed to return UPS's computer equipment, which contained UPS's database and confidential business information. SMF at ¶ 13; Doc. 89-1 at p. 9, ¶¶ 11-13. Del Zotto also emailed UPS's clients from the email address amanda@clinicalservicesinc.com advising of her new organization, Clinical Services, Inc. SMF at ¶ 13; Doc. 124 at p. 45. Del Zotto contacted Team Health to promote CSI and submitted a presentation/proposal. SMF at ¶ 14; Doc. 124 at p. 150. On May 21, 2015, Team Health emailed both DeLong and Del Zotto a contract for CSI to provide locum tenens services

for Team Health. SMF at ¶ 15; Doc. 124 at p. 155. The contract contained signature lines for both Del Zotto and DeLong, as representatives of CSI. SMF at ¶ 15; Doc. 124 at p. 163.

In an email dated May 27, 2015, DeLong advised Team Health that "Brittany Gray" would be working with Team Health until Del Zotto is cleared of the state court's injunction. SMF at ¶ 16; Doc. 124 at p. 166. "Brittany" utilized the telephone number 803-626-3522. SMF at ¶ 17; Doc. 124 at p. 167.

On July 20, 2015, UPS provided CSI and DeLong with a copy of the April 10, 2015 Injunction and advised that Florida Rule of Civil Procedure 1.610 provides that injunctions are binding on the parties to an action and on those persons in active concert or participation with them who receive actual notice. SMF at ¶ 18; Doc. 124 at p. 168. UPS further informed CSI that it had come to UPS's attention that CSI was using the misappropriated information to pursue a contract with UPS's client, Team Health. SMF at ¶ 18; Doc. 124 at p. 169.

On July 20, 2015, DeLong emailed Team Health and carbon copied the email address "alison@clinicalservicesinc.com." SMF at ¶ 19; Doc. 124 at p. 174. On October 9, 2015, "Alison Fields" e-mailed Team Health on behalf of CSI from the e-mail address "alison@clinicalservicesinc.com." SMF at ¶ 20; Doc. 124 at p. 175. On February 15, 2016, "Alison" e-mailed Team Health on behalf of CSI listing the same wireless number in her signature block—803-626-3522 that "Brittany" utilized. SMF at ¶ 21; Doc. 124 at p. 177.

On September 9, 2016, "Brittany Baker," using the same e-mail address of "Brittany Gray," (brittany@clinicalservicesinc.com), e-mailed Team Health on behalf of CSI. SMF at ¶ 24; Doc. 124 at p. 178. "Brittany Baker" has the same phone number as the one utilized by "Brittany" and "Alison Fields." SMF at ¶ 24; Doc. 124 at p. 178.

As of February 12, 2016, Del Zotto identified her telephone number as 803-626-3522; a wireless number registered to CSI, and the same telephone number as Brittany Gray, Alison Fields, and Brittany Baker. SMF at ¶ 22; Doc. 124 at pp. 110, 167, 176, 178. As of October 20, 2016, Del Zotto continued to use the same wireless number. SMF at ¶ 24; Doc. 124 at p. 179. On July 1, 2016, CSI obtained an employee health insurance plan for Del Zotto through Blue Cross Blue Shield of South Carolina. SMF at ¶ 23; Doc. 119-4.

CSI obtained contracts with St. Francis and Team Health. SMF at ¶ 25; Doc. 89-1 at p. 10, ¶ 14. Between October 21, 2015 and October 28, 2015, UPS's counsel sent letters to Greenville, St. Francis, and Team Health to provide actual notice of the state court injunction. SMF at ¶¶ 30-32; Doc. 150-1, p. 2, ¶¶ 9-11. St. Francis and Team Health continued to renew their contracts with CSI. SMF at ¶¶ 33-34; Doc. 150-3 at pp. 11, 13. St. Francis and Team Health were both former UPS clients. SMF at ¶ 35; Doc. 89-1 at p. 10, ¶ 14.

## B. Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine" only if a reasonable jury, considering the evidence present, could find for the nonmoving party, and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 Fed. Appx. 852, 858 (11th Cir. 2006).

### C. Discussion

#### i. UPS's Motion for Partial Summary Judgment

##### 1. UPS is Not Entitled to Summary Judgment on Count X – Damages for Misappropriation – CSI or Count XIV – Injunctive Relief – CSI

UPS seeks damages against CSI for misappropriation pursuant to Fla. Stat. § 688.004 and injunctive relief pursuant to Fla. Stat. § 688.003 based on CSI's "accept[ance] of the fruits of" Del Zotto's misappropriation. Doc. 126 at pp. 8-9. Citing to the state court partial judgment against Del Zotto, UPS alleges that CSI benefitted from Del Zotto's misappropriation—specifically, stealing UPS's PC and laptop, deleting trade secret information, and using the information to solicit UPS's clients—by securing contracts with UPSS' former clients. Doc. 126 at pp. 8-9. UPS further alleges that Del Zotto was an agent and CSI the principal, and that "CSI's ratification of Del Zotto's tortious acts committed in the scope of her agency makes CSI equally liable for those same tortious acts." Doc. 126 at p. 9.

CSI responds that UPS's reliance on the state court's findings during the time in which CSI was not a party to the case is inappropriate and that a multitude of facts are in dispute. Doc. 135 at p. 1.[8] CSI denies the majority of facts set forth in UPS's Motion for Partial Summary Judgment, arguing that discovery was still pending and that "evidence obtained through discovery may yield different results." Doc. 135 at ¶¶ 1-36.[9] CSI also denies other specific assertions made by UPS.[10]

In reply, UPS argues that CSI fails to dispute material facts evidencing Del Zotto's agency with CSI. Doc. 140 at p. 7. UPS further argues that *res judicata*[11] prohibits relitigating whether a trade secret exists and whether Del Zotto misappropriated it because the state court already determined that issue. Doc. 140 at p. 6. Rather, UPS states, the only issue upon summary judgment is whether Del Zotto acted as an agent for CSI. Doc. 140 at p. 6.

"In order to prove a violation of Florida's Uniform Trade Secrets Act, [a plaintiff] must prove that: (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *Marine Turbo Eng'g, Ltd. v. Turbocharger Servs. Worldwide, LLC*, No. 11-60621-CIV, 2012 WL 13005811, at *8 (S.D. Fla. July 23, 2012) (quotation marks omitted). "In addition, to qualify as a trade secret, the information that the plaintiff seeks to protect must derive economic value from

---

[8] CSI also argues that reliance on the state court's findings are inappropriate because Del Zotto's pleadings were stricken and she "was unable to testify to the contrary." Doc. 135 at ¶¶ 1-36. As UPS points out, however, the state court struck Del Zotto's pleadings and entered default judgment against her on counts other than the misappropriation count. Doc. 140 at p. 6. On the misappropriation claim, a trial was held and Del Zotto testified. Doc. 139-2; Doc. 89-1 at p. 7.

[9] CSI also disputes that the state court found that UPS's confidential information constituted trade secrets. Doc. 135 at p. 10. To the contrary, however, the state court determined that Del Zotto misappropriated UPS's confidential and trade secret information in violation of Fla. Stat. § 688 *et seq.* Doc. 89-1 at p. 10, ¶ 16.

[10] Throughout its response, CSI denies various allegations by UPS, providing a different take and alleging that "[a]n affidavit will be supplementing this item." Doc. 135 at ¶¶ 21-24, 30-31, 35-36. However, the docket does not reflect any affidavits subsequently filed by CSI.

[11] The Court notes that UPS's position appears contrary to positions UPS has taken in other motions with respect to *res judicata*, specifically, that *res judicata* would not apply because the state court proceedings were not a prior action. *See* Doc. 187 at p. 5.

not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy." *Id.* (quotation marks omitted, alterations deleted).

"A principal is liable for the tortious conduct of his agent, even though not authorized, if the agent was acting within the scope of his employment or his apparent authority." *Life Ins. Co. of N. Am. v. Del Aguila*, 417 So. 2d 651, 652 (Fla. 1982). "Whether acts are within the scope of an agent's apparent authority or whether the acts were ratified by the principal are determinable as questions of fact . . . ." *One Hour Valet of Am., Inc. v. Keck*, 157 So.2d 83, 83 (2d DCA 1963). "The general rule is that, unless the evidence is susceptible to but one interpretation . . . the question of whether an agency relationship exists is for the jury to determine." *Amerven, Inc. v. Abbadie*, 238 So. 2d 321, 322 (Fla. 3d DCA 1970).

Although UPS relies heavily on the state court's findings of fact and conclusions of law, it does not appear from the record that the state court affirmatively determined that Del Zotto was an "agent" of CSI.[12] *See* Doc. 89-1 at pp. 1-14, 47-52. And, although UPS provides additional record evidence of Del Zotto's and DeLong's conduct and the relationship between Del Zotto and CSI, the summary judgement evidence and DeLong's and CSI's submissions suggest that there is a genuine dispute about the scope of Del Zotto's relationship with CSI as well as a dispute about how CSI obtained its contracts. *See, e.g.*, Doc. 135 at ¶ 21-22, 30-31, 36[13] (e.g., stating that Del Zotto used a CSI phone for personal purposes); Doc. 155 at ¶ 9 (denying that Del Zotto contacted

---

[12] The state court did determine upon UPS's motion for sanctions, however, that Del Zotto gave perjured testimony when she stated that Clinical Services, Inc. had no affiliation with Clinical Services, LLC and when she stated that she did not have a relationship with Clinical Services, LLC and did not hold out that she does. Doc. 89-1 at pp. 49-50. UPS has filed additional motions for sanctions against DeLong and CSI for perjury and litigation misconduct. Those motions, which were filed after UPS' summary judgment motions, will be taken up by the Court at a later date. Doc. 160; Doc. 178.

[13] DeLong and CSI allege in many of these paragraphs that "[a]n affidavit will be supplementing this item" but the docket does not reflect any affidavits subsequently filed by CSI. Nonetheless, there is some support for DeLong's and CSI's representations in their depositions. *See generally* Doc. 124.

clients on behalf of CSI); Doc. 124 at pp. 59 (DeLong deposition testimony providing that Del Zotto never shared any of UPS's contacts with him); Doc. 124 at pp. 57-59 (DeLong deposition testimony suggesting that DeLong attempted to work with UPS to obtain a deal in Saudi Arabia). While there may be reason to discredit CSI's and DeLong's representations, that issue is left to the trier of fact. *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986) ("Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact."). Because genuine issues of material fact remain, UPS is not entitled to summary judgment as to Counts X and XIV.

      2.   UPS is Not Entitled to Summary Judgment on Count XII – Civil Conspiracy to Misappropriate Trade Secrets – Del Zotto and CSI

UPS argues, in the alternative, that if Del Zotto is not CSI's agent, then UPS is entitled to summary judgment on Count XII because CSI participated in a conspiracy to misappropriate UPS's confidential and trade secret information. Doc. 2 at ¶ 134 ("UPS believes that Del Zotto is and was at all relevant times a shareholder, member, employee, and/or agent of CSI. However, this Count is pled in the alternative, in the event Del Zotto is not a shareholder, member, employee, and/or agent of CSI."); Doc. 126 at p. 9 (labeling Count XII as an "alternative").

Because the Court did  not make a factual determination as to whether Del Zotto was CSI's agent, as alleged in Counts X and XIV, the Court does not have a basis to consider UPS's alternative argument based upon an assumption that Del Zotto was not CSI's agent.

However, assuming *arguendo,* that the Court could determine that Del Zotto was not CSI's agent, summary judgment would not be appropriate because UPS fails to prove a conspiracy and because genuine issues of material fact exist with respect to the evidence on which UPS relies.

"A widely accepted definition of civil conspiracy . . . is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." *Renpak, Inc. v. Oppenheimer*, 104 So. 2d 642, 646 (Fla. 2d DCA 1958) (citation and quotation marks omitted). *Accord Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1029 (Fla. 3d DCA 1981) ("[A]n action for conspiracy . . . requires that there has been a combination of two or more persons (or entities) seeking to accomplish an unlawful act or to accomplish a lawful act by unlawful means. The actors must have a common purpose.").

In Count XII, UPS alleges that Del Zotto and CSI conspired and agreed to misappropriate UPS's confidential information "by improper means." Doc. 2 at ¶ 138. In its motion, UPS argues that CSI assigned Del Zotto a series of pseudonyms, including "Brittany Gray," "Alison Fields," and "Brittany Baker," all of whom shared a wireless phone number with Del Zotto. Doc. 126 at p. 9; Doc. 124 at pp. 166, 174-175, 178-179; Doc. 89-1 at pp. 88-92.

The evidence UPS cites in support of its argument shows the following: "Alison Fields," "Brittany Gray," and "Brittany Baker" sent and received e-mail messages and shared a phone number with Del Zotto, that DeLong was aware of the involvement of "Alison Fields" and "Brittany Gray," and that it was one of DeLong's and CSI's former attorneys' "understanding" that "Alison Fields" does not exist. Doc. 124 at pp. 166, 174-175, 178-179; Doc. 89-1 at pp. 88-92. However, missing from UPS's motion is sufficient evidence that Del Zotto and CSI had an agreement or common purpose or acted in concert with each other. There is insufficient evidence in the record for the Court to infer the existence of a civil conspiracy.

Moreover, UPS's ultimate conclusion—that CSI and Del Zotto conspired for Del Zotto to use pseudonyms to solicit clients—is disputed by CSI and DeLong. Doc. 135 at ¶¶ 23-24.[14] As for the shared phone number, CSI explains that "Del Zotto appears to have used the number owned by [CSI]" as "DeLong allowed Del Zotto to continue to use the cellular phone for her personal use on occasion." Doc. 135 at ¶ 30.[15] Although CSI and DeLong do not cite to any record evidence in support of their contentions, some deposition testimony and other documents in the record tend to support those written contentions, thereby creating genuine issues of material fact. *See* Doc. 124 at p. 110 (phone number 803-626-3522 belongs to CSI); Doc. 124 at pp. 48, 59 (deposition testimony providing that neither DeLong nor CSI were providing Del Zotto with cell phone service); Doc. 124 at p. 7 (deposition testimony stating that Del Zotto's only phone number is 727-698-7792).

Because the factual question of Del Zotto's agency remains, UPS is not entitled to summary judgment on its alternative argument. Moreover, even assuming *arguendo* that Del Zotto was not an agent of CSI, UPS does not provide sufficient evidence to establish a conspiracy and genuine issues of material fact exist. Therefore, summary judgment is not warranted.

### ii. UPS's Motion for Summary Judgment on Counterclaim

#### 1. UPS is Not Entitled to Summary Judgment Based Solely on Florida's Litigation Privilege

The parties dispute whether Florida or South Carolina law applies to DeLong's and CSI's counterclaims. Doc. 182; Doc. 191. UPS urges the Court to decide that Florida law applies to the counterclaims based on the "most significant relationship" factors. *Michel v. NYP Holdings, Inc.*,

---

[14] No affidavit disputing this factual matter was submitted by CSI and Delong.
[15] No affidavit establishing that DeLong allowed Del Zotto to continue to use the cellular phone for her personal use was submitted.

816 F.3d 686, 694 (11th Cir. 2016) (stating that a federal court must apply the choice-of-law principles of the state in which it sits, and describing Florida's doctrine for resolving conflict-of-law questions). Doc. 182. Because Florida law applies, UPS contends, the Court should dismiss DeLong's and CSI's counterclaims pursuant to Florida's litigation privilege which provides absolute immunity from certain claims in tort occurring during the course of a judicial proceeding. Doc. 151 at pp. 6-7.

DeLong and CSI respond that South Carolina has the most significant relationship because "South Carolina has an interest in keeping South Carolina companies safe from this kind of behavior [by UPS] and in providing a remedy to the state's companies." Doc. 191 at p. 2. DeLong and CSI further assert that a litigation privilege would not apply to their counterclaims because "at the time of the conduct" they "were not parties to the litigation." Doc. 155 at p. 7.

Despite the parties' contentions, the Court need not determine at this stage whether Florida or South Carolina law applies in order to address UPS's motion.[16] First, neither party identifies a conflict of law with respect to litigation privilege, or, as it is sometimes referred to, immunity. Indeed, like Florida, South Carolina recognizes that "absolute" immunity attaches to "all statements relevant to a matter at issue in a judicial proceeding." *Belton v. W. Marine, Inc.*, No. 0:16-3347-TLW-SVH, 2017 WL 1373374, at *2 (D.S.C. Jan. 17, 2017), report and recommendation adopted, No. 0:16-3347-TLW, 2017 WL 1353755 (D.S.C. Apr. 13, 2017) ("South Carolina law is clear that all statements relevant to a matter at issue in a judicial proceeding are entitled to absolute immunity.").

Further, like Florida, South Carolina recognizes that such immunity may "exist beyond the formal judicial proceeding." *Id. See also Woodward v. Weiss*, 932 F. Supp. 723, 727 (D.S.C. 1996)

---

[16] The Court will issue a separate order on Plantiff's Motion to Determine Applicability of Florida Law to Counter-Defendants' Counterclaim (Doc. 182).

("[Documents] were rendered as a preliminary step to a judicial proceeding which bore a reasonable relation to litigation, and they are therefore absolutely privileged."); *Corbin v. Washington Fire & Marine Ins. Co.*, 278 F. Supp. 393, 396 (D.S.C.), *aff'd*, 398 F.2d 543 (4th Cir. 1968) ("It is . . . clear that unqualified privilege does not depend on the rigid requirement of a strictly legislative or judicial proceeding; its limits are fixed rather by considerations of public policy.") DeLong and CSI even appear to acknowledge that South Carolina law on this point may limit their ability to bring certain claims. Doc. 155 at p. 7.

Second, even if litigation privilege or immunity did apply, it would be insufficient to grant summary judgment in favor of UPS on any of the counterclaims in full. UPS alleges that the counterclaims "rely solely on letters sent by UPS's counsel to three UPS clients" to provide notice of the state court injunction Doc. 151 at p. 6. Because the state court injunction was issued in a pending lawsuit and related to that proceeding, UPS argues, the letters are subject to Florida's litigation privilege and cannot be the basis for the tortious claims alleged. Doc. 151 at p. 6.

However, evidence in the record suggests that the counterclaims are based on more than the letters. To be sure, the parties' Joint Stipulation of Material Facts states that all of DeLong's and CSI's counterclaims "rely solely" on the letters.[17] *See* Doc. 158 at ¶ 47. But the evidence cited in support of that stipulation suggests only that the letters were part of DeLong's and CSI's counterclaims, not that they were the *only* basis for the counterclaims. Doc. 150-2 at pp. 2-4 (interrogatory response by DeLong stating that Ludvik contacted clients about DeLong and CSI); Doc. 150-3 at pp. 7-11, 14-21 (deposition testimony[18] by DeLong stating that Ludvik harassed

---

[17] Because it is unclear as to what the parties mean by this language, "rely solely", in the Joint Stipulation of Material Facts, the Court will provide the parties an opportunity to further brief this issue.

[18] DeLong and CSI allege in their response to UPS's Motion for Summary Judgment on Counterclaim that the deposition testimony excerpts upon which UPS relies are missing authentication pages, including the court reporter and deponent's signatures. Doc. 155 at p. 8. DeLong and CSI do not specify to which deposition transcript excerpts they refer. However, DeLong and CSI previously relied on UPS's deposition testimony excerpts in document 124 in

employees to obtain DeLong's information and that DeLong experienced emotional distress due to UPS's firm "constantly sending process servers to [his] house, [his] kids, things like that. Things of that nature."). Moreover, DeLong's and CSI's allegations in their counterclaims assert additional bases for the claims, such as Del Zotto's family's "unsubstantiated" calls to South Carolina police to report DeLong. Doc. 83 at ¶¶ 165-167.

Because the pleadings, and the evidence, suggest that the counterclaims rely on allegations other than the letters, the Court cannot rely on UPS's assertion, or on the parties' stipulation, that the counterclaims are based solely on the letters. Therefore, even if litigation privilege or immunity applies to bar any counterclaims stemming solely from the letters,[19] the counterclaims would survive because they appear to be based on other, additional allegations. Therefore, UPS has not met its burden to show that it is entitled to summary judgment as to all of the counterclaims.

### 2. UPS is Entitled to Summary Judgment on Count VI – Defamation

Under Florida law, a claimant must show the following to prove a case for defamation: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Under South Carolina law, "[t]he elements of defamation include: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement

---

support of their response to UPS's Motion for Partial Summary Judgment. *E.g.*, Doc. 135 at p. 5 (citing Doc. 124). To the extent that the missing authentication pages or signatures create an issue of admissibility, the Court notes that the deposition testimony excerpts in this case are not outcome-determinative and the absence of the excerpts would not alter the holding of the Court.

[19] The Court agrees that the litigation privilege would bar any counterclaims based *solely* on the three letters sent by UPS's counsel to provide notice of the state court injunction.

irrespective of special harm or the existence of special harm caused by the publication." *McNeil v. S.C. Dep't of Corr.*, 404 S.C. 186, 195 (Ct. App. 2013) (quotation marks omitted).

UPS asserts that CSI's defamation claim fails as a matter of law because CSI has failed to identify or describe the alleged defamatory statements. Doc. 151 at pp. 7-8. DeLong's and CSI's response does not address UPS's argument or otherwise describe or point to any evidence of the defamatory statement. *See* Doc. 155.

DeLong's and CSI's counterclaim for defamation contains few relevant facts and mostly conclusory allegations. In Count VI, the defamation claim, CSI and DeLong incorporate all previous allegations and allege that all counter-defendants "improperly communicated false and damaging information about [CSI] and/or [DeLong] to its current and prospective clients," and "knew or should have known that its communications were false" and that CSI suffered harm as a result of these communications. Doc. 85 at ¶¶ 203-205. In a previous section of the counterclaim, "Facts Applicable to All Counts," DeLong and CSI generally allege that Ludvik made "wholly unsubstantiated allegations concerning [DeLong] to the City of Columbia, South Carolina Police Department"; that Anthony Del Zotto "called the Marietta Police Department and made false allegations that [DeLong] was harassing Joe Del Zotto"; that the Marietta Police Department contacted DeLong "and threatened criminal charges as a result of the false allegations against him"; that after obtaining the state court injunction against Del Zotto, Ludvik and Joe Del Zotto "contacted South Carolina entities and businesses who were both current and prospective [clients of CSI] and misrepresented to them that [DeLong and CSI] were subject to an injunction." Doc. 85 at pp. 165-167, 172.

DeLong's and CSI's defamation claim purports to be against all counter-defendants, but does not specify which statement(s) by which counter-defendant(s) are the subject of the claim.

The statements forming the basis of the defamation claim against all counter-defendants were purportedly made to CSI and/or DeLong's current and prospective clients; yet, the general allegations suggest only that Ludvik and Joe Del Zotto may have made statements to CSI's or DeLong's clients. Doc. 85 at ¶ 172. Moreover, as UPS discusses, the content of the alleged defamatory statements is unclear and/or unknown.

CSI's and DeLong's counterclaim concludes that the alleged defamatory statements were "false"—a required element of a defamation claim—but do not provide any factual matter in support of that conclusion. Doc. 85 at ¶ 204. And, CSI and DeLong fail to provide any evidence— either in the counterclaim or in their response to UPS's motion—that suggests a genuine issue of material fact.[20] CSI's and DeLong's counterclaim for defamation therefore relies on conclusory allegations, which cannot defeat summary judgment. *Hill*, 198 Fed. Appx. at 858. Because CSI and DeLong have failed to establish an essential element of their counterclaim for defamation or failed to provide any evidence suggesting a dispute of material fact, UPS is entitled to summary judgment on the counterclaim for defamation.

### 3. UPS is Entitled to Summary Judgment on Count VII – Outrage

UPS also asserts that it is entitled to summary judgment on Count VII of the counterclaim because its conduct, as alleged by DeLong and CSI, does not rise to the level of "outrageous" required for such a claim. DeLong's and CSI's response does not address this aspect of UPS's argument. *See* Doc. 155.

Florida law recognizes claims for intentional infliction of emotional distress caused by conduct so "extreme and outrageous" as to "go beyond all possible bounds of decency, and to be

---

[20] "It is the obligation of the non-moving party, however, not the Court, to scour the record in search of the evidence that would defeat a motion for summary judgment. . . ." *Lawrence v. Wal-Mart Stores, Inc.*, 236 F. Supp. 2d 1314, 1322 (M.D. Fla. 2002). Nonetheless, the Court's own review of the parties' summary judgment evidence does not reveal specific facts establishing the falsity of any alleged defamatory statements.

regarded as atrocious, and utterly intolerable in a civilized community." *Scheller v. Am. Med. Int'l, Inc.*, 502 So. 2d 1268, 1270-71 (Fla. 4th DCA 1987) (quotation marks omitted). Such liability does not include insults, threats, or "other trivialities." *Id.* Similarly, South Carolina law recognizes a tort of outrage, which is "conduct which is so extreme and outrageous as to exceed all possible bounds of decency; obnoxious conduct utterly intolerable in a civilized society." *Bell v. Dixie Furniture Co.*, 285 S.C. 263, 265 (1985). *See also Craig v. Andrew Aaron & Assocs., Inc.*, 947 F. Supp. 208, 212 (D.S.C. 1996) ("To establish the tort of intentional infliction of emotional distress, or outrage, plaintiffs must establish four elements: (1) that the defendant recklessly or intentionally inflicted severe emotional distress or knew that distress would probably result from the conduct; (2) that the conduct was so extreme and outrageous that it exceeded all possible bounds of decency and was furthermore atrocious, and utterly intolerable in a civilized community; (3) that the actions caused emotional distress; and (4) that the distress suffered was so severe that no reasonable person could be expected to endure it.").

DeLong's and CSI's counterclaim for "outrage" contains few relevant facts and mostly conclusory allegations. In Count VII, CSI and DeLong incorporate all previous allegations and allege that all counter-defendants "recklessly inflicted severe emotional distress on [DeLong] and/or were certain or substantially certain that such distress would result from their conduct"; acted so extremely and outrageously "as to exceed all possible bounds of decency" such that their conduct "must be regarded as atrocious, and utterly intolerable in a civilized community"; and caused DeLong emotional distress that was "so severe that no reasonable person could be expected to endure it." Doc. 85 at ¶¶ 206-211.

As previously described, in the section of DeLong's and CSI's pleading titled, "Facts Applicable to All Counts," DeLong and CSI generally allege that Ludvik and Anthony Del Zotto

made unsubstantiated or false allegations about DeLong to police, that the Marietta Police Department contacted DeLong and threatened criminal charges against him as a result of those allegations, and that the counter-defendants "contacted South Carolina entities and businesses who were both current and prospective [clients of CSI] and misrepresented to them that [DeLong and CSI] were subject to an injunction." Doc. 85 at pp. 165-167, 172.

CSI's and DeLong's counterclaim recites the necessary elements of a claim for intentional infliction of emotional distress or outrage but does not provide sufficient factual matter in support of those recitations. Doc. 85 at ¶¶ 206-211. And, CSI's and DeLong's general allegations, that the counter-defendants called South Carolina police and made statements about DeLong to his and CSI's prospective and current clients, are insufficient to support a legal conclusion that the counter-defendants' conduct was so "outrageous" or "extreme" as defined under either Florida and South Carolina law.

CSI and DeLong fail to provide any evidence—either in the counterclaim or in their response to UPS's motion—to assert a genuine issue of material fact. CSI's and DeLong's counterclaim for outrage therefore relies on conclusory allegations, which cannot be used to defeat summary judgment. *Hill*, 198 Fed. Appx. at 858. Because CSI and DeLong have failed to provide sufficient evidence in support of their counterclaim for outrage or failed to provide any evidence suggesting a genuine dispute of material fact, UPS is entitled to summary judgment on the counterclaim for outrage.

Accordingly, it is **ORDERED**:

1. Defendant Eric DeLong's and Defendant Clinical Services, LLC's Motion to Amend Affirmative Defenses (Doc. 168) is **DENIED.**

2. Defendant Eric DeLong's and Defendant Clinical Services, LLC's Motion for Judgment as a Matter of Law (Doc. 170) is **DENIED.**

3. Plaintiff Universal Physician Services LLC's Motion for Partial Summary Judgment (Doc. 126) is **DENIED,** as genuine issues of material fact preclude the entry of summary judgment.

4. Plaintiff Universal Physician Services LLC's Motion for Summary Judgment on Counterclaim (Doc. 151) is **GRANTED IN PART AND DENIED IN PART.** Plaintiff Universal Physician Services LLC is entitled to summary judgment on Counts VI and VII of Defendant Eric DeLong's and Defendant Clinical Services, LLC's Counterclaim. Counts VI and VII of the Counterclaim will be **DISMISSED** with prejudice at the conclusion of this litigation. In all other respects, Plaintiff Universal Physician Services LLC's Motion for Summary Judgment on Counterclaim is **DENIED.**

5. Because there is confusion in the record regarding whether the counterclaims are based *"solely"* on the three letters sent by UPS's counsel to provide notice of the state court injunction, the parties may provide supplemental briefing on this issue. On or before October 15, 2018, the parties shall submit a supplemental brief of no more than seven (7) pages indicating whether the counterclaims are based *solely* on the three letters. The supplemental briefing shall specify which counterclaims are based *solely* on the three letters and which are not. If the counterclaims are based on more than the three letters, that additional evidence shall be identified by citation to the record. However, no additional evidence such as affidavits or transcripts will

be accepted, as the time for filing such has expired. Upon receipt of the supplemental briefs, the Court will reconsider the litigation privilege argument.

**DONE AND ORDERED** in Tampa, Florida on September 29, 2018.

Charlene Edwards Honeywell
United States District Judge

Copies to:
All Parties and Counsel of Record