UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNIVERSAL PHYSICIAN SERVICES,
LLC,

    Plaintiff,

v.                                                    Case No: 8:16-cv-1274-T-36JSS

AMANDA DEL ZOTTO, ERIC DELONG,
CLINICAL SERVICES, LLC, CLINICAL
SERVICES INTERNATIONAL,
CLINICAL SERVICES
INTERNATIONAL, INC., CLINICAL
SERVICES INTERNATIONAL, LLC, CSI,
INC. and CSI, LLC,

    Defendants.
_____/

# **O R D E R**

        This matter comes before the Court upon Plaintiff/Counter-Defendant Universal Physician Services' ("UPS") "Motion to Determine Applicability of Florida Law to Counter-Defendants' Counterclaim" (Doc. 182) (the "Motion") and Defendants/Counter-Plaintiffs Eric DeLong ("DeLong") and Clinical Services, LLC's ("CSI") response in opposition (Doc. 191). In the Motion, UPS asserts that Florida law should apply to DeLong and CSI's counterclaims because Florida is the place with the "most significant relationship" to the counterclaims. DeLong and CSI disagree, contending that South Carolina law has the "most significant relationship" to the counterclaims. Finding that the parties' submissions lacked sufficient analysis, the Court ordered supplemental briefing. Doc. 311. Specifically, the Court ordered the parties to file memoranda addressing the elements required to prove each counterclaim under both Florida and South Carolina law, addressing what, if any, conflicts of law exist as to each claim, and addressing why

Florida or South Carolina law should apply to each claim in light of the allegations contained within each claim. *Id.* UPS filed a supplemental memorandum (Doc. 313) in accordance with the Court's instructions.[1] Having reviewed the parties' submissions, including supplemental submissions, and being fully advised in the premises, the Court will now grant UPS's Motion.

## I. BACKGROUND[2]

DeLong and CSI maintain[3] the following counterclaims against UPS: Count I - Unfair and Deceptive Trade Practices; Count II - Tortious Interference with Contractual and Business Relations; Count III - Tortious Interference with Prospective Contractual and Business Relations; Count IV - Conspiracy to Interfere with Contractual and Business Relations; and Count V - Conspiracy to Interfere with Prospective Contractual and Business Relations. Doc. 85.

DeLong and CSI allege the following regarding all five counts. CSI is a South Carolina limited liability company that is incorporated in South Carolina. *Id.* at ¶ 137. DeLong is a citizen and resident of South Carolina. *Id.* at ¶ 139. UPS is an entity incorporated in Florida with its members and agents residing in Ohio. *Id.* at ¶ 140. Mary Ludvik ("Ludvik"), who is a citizen and resident of Ohio, is the sole managing member and registered agent of UPS. *Id.* at ¶¶ 141-143. Joseph Del Zotto is Ludvik's spouse, and Anthony Del Zotto is the son of Ludvik and Joseph Del Zotto. *Id.* at ¶ 151. Defendant Amanda Del Zotto ("Del Zotto") is the daughter of Ludvik and Joseph Del Zotto. *Id.* at ¶ 163.

---

[1] DeLong and CSI also filed a supplemental memorandum (Doc. 321). Their memorandum, however, entirely ignores the Court's directions and is of little (if any) use.
[2] The background of this case is detailed extensively in prior orders of the Court. For purposes of this Order, only the relevant facts are set forth.
[3] DeLong and CSI originally asserted seven counterclaims against UPS, Mary Ludvik, Joseph Del Zotto, and Anthony Del Zotto. *See* doc. 85 at p. 13. The Court dismissed Counts VI and VII in full and dismissed all counts as to Mary Ludvik, Joseph Del Zotto, and Anthony Del Zotto. Doc. 212; Doc. 310. The only remaining counterclaims are Counts I through V against UPS.

Del Zotto worked for UPS beginning about January 1, 2012 and ending February 2015. *Id.* at ¶¶ 163-164. In March 2015, Ludvik and Joseph Del Zotto made unsubstantiated allegations about DeLong to the City of Columbia, South Carolina Police Department. *Id* at ¶ 165. The same month, Anthony Del Zotto called the Marietta Police Department and made false allegations that DeLong was harassing Joseph Del Zotto. *Id.* at ¶ 166. The Marietta Police Department contacted DeLong in Columbia, South Carolina and threatened criminal charges against him as a result of the false allegations. *Id.* at ¶ 167.

In April 2015, UPS filed this case against Del Zotto. *Id.* at ¶ 168. UPS obtained a temporary injunction against Del Zotto. *Id.* at ¶ 171. After obtaining this injunction, UPS, Ludvik, and Joseph Del Zotto contacted CSI's current and prospective clients, located in South Carolina, and misrepresented to them that DeLong and CSI were subject to the injunction. *Id.* at ¶ 172.

DeLong and CSI allege that Count I, Unfair and Deceptive Trade Practices, is based on actions of UPS which "constitute unfair and/or deceptive methods as defined by the South Carolina Unfair Trade Practices Act (UTPA), codified at S.C. Code Ann. 39-5-10 through 39-5-160." *Id.* at ¶ 174. DeLong and CSI allege the following with respect to Count II, Tortious Interference with Contractual and Business Relations: CSI had contractual relationships with several South Carolina businesses and entities, UPS was aware of such relationships, and UPS, individually and by and through their counsel, sought to induce a breach of such contracts by making misrepresentations and threats to CSI's clients. *Id.* at ¶¶ 179-182. With respect to Count III, Tortious Interference with Prospective Contractual and Business Relations, DeLong and CSI allege UPS intentionally interfered with CSI's potential contractual relations. *Id.* at ¶ 185. In Count IV, Conspiracy to Interfere with Contractual and Business Relations, and Count V, Conspiracy to Interfere with Prospective Contractual and Business Relations, DeLong and CSI allege UPS contacted CSI's

clients and prospective clients by phone to persuade them to stop doing business with CSI, sent letters containing inaccurate information, and engaged in other harassing behavior. *Id.* at ¶¶ 191, 199.

## II. DISCUSSION

### A. Whether a True Conflict Exists

Before beginning a conflict of law analysis, a court should determine whether a conflict of laws truly exists. *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1234-35 (11th Cir. 1995).

A district court engaged in a choice of law analysis must determine which sovereigns have an interest in the application of their laws. *Pycsa Panama, S.A. v. Tensar Earth Technologies, Inc.*, 625 F. Supp. 2d 1198, 1218 (S.D. Fla. 2008) *aff'd*, 329 Fed. Appx. 257 (11th Cir. 2009) (citing *Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1568 (11th Cir. 1990)). A comprehensive choice of law analysis is only required if the matter involves a true conflict. *Id.* (citing *Tune v. Philip Morris, Inc.*, 766 So. 2d 350, 352 (Fla. 2d DCA 2000)).

A true conflict exists where "two or more states have a legitimate interest in a particular set of facts in litigation and the laws of those states differ or would produce a different result." *Id.* (citing *Walker v. Paradise Hotel, Ltd.*, No. 01–3564, 2003 WL 21361662, *2-3 (S.D. Fla. April 25, 2003)); *see also Fioretti*, 53 F.3d at 1234 (noting the principle that "when the laws of the competing states are substantially similar, the court should avoid the conflicts question and simply decide the issue under the law of each of the interested states").

A false conflict is presented "where the laws of the interested jurisdictions are: (1) the same; (2) different but would produce the same outcome under the facts of the case; or (3) when the policies of one jurisdiction would be furthered by the application of its laws while the policies of the other jurisdiction would not be advanced by the application of its laws." *Pycsa*, 625 F. Supp.

4

2d at 1218-19 (citing *Tune*, 766 So. 2d at 352). Where a false conflict exists, the Court applies the law of the forum state. *See Fioretti*, 53 F.3d at 1234, n.21 (stating that a court may apply the law of the forum state when no conflict exists); *Pycsa Panama*, 625 F. Supp. 2d at 1219 (citing *Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 882 (11th Cir. 1983) ("[U]nder applicable conflict-of-laws principles the law of the forum would govern the substantive issues due to the absence of facts justifying the application of the law of some other jurisdiction.")).

UPS's supplemental memorandum outlines in detail the conflicts of law that exist between Florida law and South Carolina law with respect to four of five of DeLong and CSI's counterclaims.[4] Doc. 313 at pp. 2-4. In particular, South Carolina law at times requires a plaintiff to prove additional elements beyond what Florida law provides. As an example, a claim for unfair trade practices under South Carolina statue requires the plaintiff to prove that the unlawful act had an adverse impact on the public, while Florida law makes no such requirement. *Compare, e.g.*, *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006) ("To recover in an action under the [SC]UTPA, the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s).") *with State v. Beach Blvd Auto. Inc.*, 139 So. 3d 380, 393 (Fla. Dist. Ct. App. 2014) ("In order to assert a claim for damages under FDUTPA, a plaintiff must establish: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages.").

Because a conflict of law exists with respect to at least some of the counterclaims, the Court will conduct a conflict of law analysis.

### B. Whether Florida or South Carolina Law Applies to Counts I, II, IV, and V

---

[4] No conflict of law exists as to Count III, Tortious Interference with Prospective Contractual and Business Relations. Therefore, the Court applies Florida law, the law of the forum state.

In diversity actions, "a federal court must apply the choice-of-law principles of the state in which it sits." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). To do so, "[f]irst, the Court must characterize the legal issue, such as whether it is a contract, tort, or property issue. After characterizing the legal issue, the Court then determines the choice-of-law rule that the forum state applies to that particular type of issue." *Eli Research, LLC v. Must Have Info Inc.*, No. 2:13-cv-695-FTM-38CM, 2014 WL 4540110, at *3 (M.D. Fla. Sept. 11, 2014) (citations omitted).

Florida, the state in which this Court sits, resolves conflict-of-laws questions involving tort claims according to the "most significant relationship" test, as outlined in the Restatement (Second) of Conflict of Laws. *Grupo Televisa, S.A. v. Telemundo Communications Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) (citing Restatement (Second) of Conflict—the General Tort Principle, § 145). To determine which state has the "most significant relationship" to the case, courts consider

> (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

*Michel*, 816 F.3d at 694; *Grupo Televisa*, 485 F.3d at 1240. In addition, the Eleventh Circuit has counseled that courts should also look to the Restatement's comments. *Grupo Televisa*, 485 F.3d at 1241-42 (citing Restatement (Second) of Conflict—the General Tort Principle, § 145(2), cmts. e-f).

Each of DeLong and CSI's five counterclaims sound in tort. And, each counterclaim is based on the same factual allegations. Doc. 85 at ¶¶ 165-172. Therefore, the Court applies the same conflict of law analysis to resolve the question with respect to each of the five counterclaims.

*The place where the injury occurred*

The comments to the Restatement indicate that the place of injury is most obvious where a personal injury or injury to a tangible thing has occurred. Restatement (Second) of Conflict—the General Tort Principle, § 145(2), cmt. e. However, "the place of injury will not play an important role in the selection of the state of the applicable law" where, for example, "the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue." *Id.*

UPS apparently concedes that the place where DeLong and CSI's alleged injury occurred is in South Carolina, where the pair are citizens.[5] Doc. 313 at p. 5; *see also* doc. 85 at ¶¶ 137-139. However, DeLong and CSI state that they received their injuries not only in South Carolina but also "at each hospital in which a contract was pending." Doc. 321 at p. 2. DeLong and CSI do not specify where else they may have had contracts pending; however, there has been evidence presented throughout this case that CSI's business extends beyond South Carolina. *See, e.g.*, doc. 302-12 at p. 2 (e-mail from DeLong's CSI e-mail address regarding potential placements in Kentucky and West Virginia). Moreover, Defendants indicate that they may have done some business in Florida. *See* doc. 321 at p. 2 (stating DeLong and CSI did "little to no business in the State of Florida but had contracts in multiple states"). DeLong and CSI's counterclaims provide the Court little information about where DeLong and CSI did most of their business or with whom they allegedly lost business. Because of the lack of evidence on this point, the Court is unable to

---

[5] UPS, however, points to § 148, cmt. c of the Restatement for the principle that the "place of loss does not play so important a role in the determination of the law governing actions for fraud and misrepresentation." Doc. 313 at p. 5. UPS fails to note that § 148 applies to actions for fraud and misrepresentation where a claimant is injured "on account of his reliance" on the opposing party's representation. The counterclaims offer no allegations that Defendants relied to their detriment on UPS's representations. Nonetheless, as discussed, § 145, cmt. e does note that there are other situations where "the place of injury will not play an important role" such as when "the injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence." Restatement (Second) of Conflict—the General Tort Principle, § 145(2), cmt. e.

clearly ascertain the place of DeLong and CSI's alleged injury. *See* Restatement (Second) of Conflict—the General Tort Principle, § 145(2), cmt. e.

*The place where the conduct causing the injury occurred*

The place where conduct occurred is given "particular weight" in some instances where there is "no one clearly demonstrable place of injury." Restatement (Second) of Conflict—the General Tort Principle, § 145(2), cmt. e. The Restatement provides that

> [w]hen the injury occurred in two or more states, or when the place of injury cannot be ascertained or is fortuitous and, with respect to the particular issue, bears little relation to the occurrence and the parties, the place where the [offending party's] conduct occurred will usually be given particular weight in determining the state of the applicable law.

*Id.* Moreover, "when the primary purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance." *Id.*

The Court finds that the second factor of the significant relationship test points to Florida. DeLong and CSI allege that UPS, a company based in Florida, contacted CSI's clients and two police departments. Doc. 2 at ¶ 1 (listing UPS's principal place of business in St. Petersburg, Florida); *Id.* at ¶ 14 (stating that Del Zotto worked for UPS in its Florida office). Moreover, at least some of the communications from UPS on which DeLong and CSI base their counterclaims clearly originated in Florida. *See, e.g.*, doc. 182-1 at p. 6.

As discussed *supra*, DeLong and CSI's place of injury is not clearly ascertainable in light of the available facts. Moreover, a significant purpose of legislation concerning unfair and deceptive trade practices and tortious interference is to deter or to punish misconduct. *See* Restatement (Second) of Conflict—the General Tort Principle, § 145(2), cmt. c. (stating that every tort rule is to some extent designed to deter); *See State ex rel. Wilson v. Ortho-McNeil Janssen Pharmaceuticals, Inc.*, 777 S.E.2d 176, 206 (S.C. 2015) (stating that the legislative intent of the

South Carolina Unfair Trade Practices Act is to deter unfair and deceptive behavior); *Eli Research*, 2014 WL 4540110, at *7 (noting "[i]t is well established that claims under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204, are grounded in tort" and explaining that a claim for "conspiracy" must be brought in combination with an independent tort and treated like a tort claim for purpose of conflict of law analysis); *Grupo Televisa*, 485 F.3d at 1241-42 ("Florida's law of tortious interference is clearly conduct-regulating on some level since the law allows for punitive damages, which are meant to punish wrongdoers."); *Waldrep Bros. Beauty Supply v. Wynn Beauty Supply Co.*, 992 F.2d 59, 62 (4th Cir. 1993) (characterizing a claim for intentional interference with contract and conspiracy to do so as tort claims).

Given the comments to the Restatement, coupled with the facts that DeLong and CSI's place of injury cannot clearly be ascertained and that DeLong and CSI's claims sound exclusively in tort, the Court gives the second factor, the place where the conduct occurred, particular weight in the overall analysis. *See Grupo Televisa*, 485 F.3d at 1241-42.

*The domicile, residence, nationality, place of incorporation and place of business of the parties*

The third factor of the significant relationship test considers the places to which the parties are connected. With respect to most tort claims, "the importance of these contacts depends largely upon the extent to which they are grouped with other contacts." Restatement (Second) of Conflict—the General Tort Principle, § 145(2), cmt. e. While the fact that one party is connected to a particular state usually carries little weight by itself, "the fact that the domicil[e] and place of business of all parties are grouped in a single state is an important factor to be considered." *Id.*

Here, UPS is a Florida company with its principal place of business in Florida. Doc. 2 at ¶ 1. DeLong is a citizen of South Carolina, and CSI is a South Carolina company. Doc. 85 at ¶¶ 137-

9

139. Because the parties' connections are split between two states, the Court finds that the third factor is inconclusive. *Eli Research*, 2014 WL 4540110, at *6.

*The place where the relationship, if any, between the parties is centered*

Initially, the parties dispute that they have any relationship. Doc. 313 at p. 5; Doc. 321 at p. 3. UPS argues that to the extent any relationship exists, it is based in Florida, where the dispute surrounding this case began. Doc. 313 at p. 5. DeLong and CSI contend that "[t]o the extent that any discussions the parties may have had prior to litigation could be construed as a relationship, all communications were done by phone and generally speaking took place in South Carolina." Doc. 321 at p. 3.

As an initial matter, the Court rejects DeLong and CSI's suggestion that the fourth factor favors South Carolina based on phone communications. While the phone communications may have taken place in South Carolina from DeLong and CSI's perspective, there is no evidence that UPS ever traveled to South Carolina to hold a phone discussion with DeLong and CSI. Rather, it is more likely, given the other facts in this case and based on common sense, that UPS would place such a phone call from its office in Florida.

The Court finds more persuasive UPS's reasoning, that the parties' relationship is centered in Florida. DeLong and CSI's counterclaims allege tortious interference and unfair and deceptive trade practices by UPS based in part on letters UPS sent regarding its litigation with Del Zotto in this same case. That litigation was initiated, and continues today, in Florida. Moreover, that litigation began based on allegations that Del Zotto, who had worked in UPS's Florida office, misappropriated UPS's trade secrets and stole UPS's property and confidential information for the benefit of herself and others (who UPS later alleged to be DeLong and CSI). Doc. 2 at ¶¶ 14, 18, 27, 94-95.

Having conducted a thorough analysis based upon the Restatement, comments to the Restatement with respect to tort claims, and the Eleventh Circuit's comments in *Grupo Televisa*, the Court finds that none of the four factors of the significant relationship test point to the application of South Carolina law. However, two of the four factors point to application of Florida law. Therefore, Florida law governs each of DeLong and CSI's counterclaims. Accordingly, it is

**ORDERED:**

1. UPS's "Motion to Determine Applicability of Florida Law to Counter-Defendants' Counterclaim" (Doc. 182) is **GRANTED.** After careful analysis, the Court finds that Florida law applies to DeLong and CSI's counterclaims for which a conflict of law exists. To the extent no conflict of law exists, Florida law also applies.

**DONE AND ORDERED** in Tampa, Florida on November 14, 2019.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any